# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **520 S. MICHIGAN AVENUE** | ) | |
| **ASSOCIATES, LTD., d/b/a** | ) | |
| **THE CONGRESS PLAZA HOTEL &** | ) | |
| **CONVENTION CENTER,** | ) | |
| | ) | **No. 06 C 4552** |
| **Plaintiff,** | ) | |
| | ) | **Judge Joan H. Lefkow** |
| **v.** | ) | |
| | ) | |
| **CATHERINE SHANNON, DIRECTOR** | ) | |
| **OF THE ILLINOIS DEPARTMENT OF** | ) | |
| **LABOR,**[1] | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff 520 S. Michigan Avenue Associates, Ltd., doing business as The Congress Plaza

Hotel & Convention Center ("the Hotel"), filed this declaratory judgment action against the

Director of the Illinois Department of Labor ("the Director") seeking a declaration that 820 Ill.

Comp. Stat. 140/3.1, the Hotel Room Attendant Amendment ("the Amendment") to the One Day

Rest in Seven Act, 820 Ill. Comp. Stat. 140/1 *et seq.*, is unconstitutional. The Hotel alleges that

the Amendment violates the Supremacy Clause of the United States Constitution, U.S. Const.

art. VI, cl. 2, because it is preempted by the National Labor Relations Act ("NLRA"), 29 U.S.C.

§ 151 *et seq.*, and section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §

185(a). The Hotel also claims that the Amendment violates the Hotel's federal constitutional

rights to due process and equal protection as well as certain provisions of the Illinois

Constitution. It requests a permanent injunction prohibiting enforcement of the Amendment.

The court has jurisdiction under 28 U.S.C. §§ 1331, 2201, and 2202 and 42 U.S.C. § 1983.

---

[1] Catherine Shannon has replaced Art Ludwig as the Director of the Illinois Department of Labor. Ms Shannon has been automatically substituted under Fed. R. Civ. P. 25(d)(1).

Unite Here Local 1 ("Unite Here"), a labor union representing hotel room attendants in Cook County, including employees of the Hotel, was granted leave to intervene as a defendant. Dkt. No. 31. Before the court are motions to dismiss filed by the Director and Unite Here (collectively, "the defendants"). Both defendants move to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. The Director also moves to dismiss for lack of subject matter jurisdiction based on Fed. R. Civ. P. 12(b)(1) and her argument that under the Eleventh Amendment this court lacks subject matter jurisdiction to decide a state-law injunction claim against a state official sued in his official capacity. For the reasons stated below, the motions to dismiss [# 25, # 29] are granted.

This case is almost identical to one filed in 2005 in the Circuit Court of Cook County where the Illinois Hotel and Lodging Association raised substantially the same claims that the Hotel has raised in this court. Circuit Judge James Henry granted summary judgment to the defendants, finding that the Amendment was not preempted by the NLRA and that it did not violate the special legislation clause of the Illinois Constitution or plaintiffs' right to equal protection. *See Ill. Hotel & Lodging Ass'n* v. *Ludwig,* 869 N.E.2d 846, 374 Ill. App. 3d 193 (Ill. App. Ct. 1st Dist. 2007). Plaintiffs appealed. The appellate court denied their request for a stay and indicated that there was no significant possibility of reversal. Four days after that, the Hotel filed this case.[2] On May 18, 2007, Judge Henry's holding was affirmed. *Ill. Hotel & Lodging Ass'n* v. *Ludwig,* 869 N.E.2d at 855. The appellate court's opinion is well-reasoned and this court finds it to be persuasive.

---

[2] To avoid the preclusive effect of the Illinois case, the Hotel alleges that it is not a member of the Illinois Hotel and Lodging Association. Complaint, at ¶ 7.

## STANDARD FOR A MOTION TO DISMISS

A motion to dismiss under Rule 12(b)(6) challenges the complaint on the basis of a failure to state a claim on which relief can be granted. In ruling on the motion, the court accepts as true all well-pleaded facts alleged in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff. *Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999). The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp.* v. *Twombly*, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).

## ALLEGATIONS FROM THE COMPLAINT

The Hotel is located at 520 S. Michigan Avenue in Chicago, Illinois, in Cook County. The Hotel and Unite Here have been involved in collective bargaining since their most recent agreement expired on December 31, 2002. Starting in June of 2003 and continuing through the present, Unite Here has been engaged in a work stoppage while negotiations continue. The Hotel continues to fulfill the terms of the expired agreement, which include the following: a work day of eight productive hours, one free meal to room attendants during a customary half-hour unpaid break, and clean and sanitary facilities in which the room attendants may eat their meals, which the attendants are obligated to cooperate in maintaining.

The Amendment provides as follows:

§ 3.1. Hotel room attendants.

(a) As used in this Section, "hotel room attendant" means a person who cleans or puts in order guest rooms in a hotel or other establishment licensed for transient occupancy.
(b) This Section applies only to hotels and other establishments licensed for transient occupancy that are located in a county with a population greater than 3,000,000.
(c) Notwithstanding any other provision of law, every hotel room attendant shall receive a minimum of 2 15-minute paid rest breaks and one 30-minute meal

period in each workday on which the hotel room attendant works at least 7 hours. An employer may not require any hotel room attendant to work during a break period.

(d) Every employer of hotel room attendants shall make available at all times a room on the employer's premises with adequate seating and tables for the purpose of allowing hotel room attendants to enjoy break periods in a clean and comfortable environment. The room shall have clean drinking water provided without charge.

(e) Each employer of hotel room attendants shall keep a complete and accurate record of the break periods of its hotel room attendants.

(f) An employer who violates this Section shall pay to the hotel room attendant 3 times the hotel room attendant's regular hourly rate of pay for each workday during which the required breaks were not provided.

(g) It is unlawful for any employer or an employer's agent or representative to take any action against any person in retaliation for the exercise of rights under this Section. In any civil proceeding brought under this subsection (f), if the plaintiff establishes that he or she was employed by the defendant, exercised rights under this Section, or alleged in good faith that the defendant was not complying with this Section, and was thereafter terminated, demoted, or otherwise penalized by the defendant, then a rebuttable presumption shall arise that the defendant's action was taken in retaliation for the exercise of rights established by this Section. To rebut the presumption, the defendant must prove that the sole reason for the termination, demotion, or penalty was a legitimate business reason.

(h) In addition to the remedies provided in Sections 6 and 7, a person claiming violation of this Section shall be entitled to all remedies available under law or in equity, including but not limited to damages, back pay, reinstatement, or injunctive relief. Any person terminated in violation of this Section shall recover treble his or her lost normal daily compensation and fringe benefits, together with interest thereon, and any consequential damages suffered by the employee. The court shall award reasonable attorney's fees and costs to a prevailing plaintiff in an enforcement action under this Section.

820 Ill. Comp. Stat. 140/3.1


# NATIONAL LABOR RELATIONS ACT

The Constitution's Supremacy Clause states, in pertinent part, that "the Laws of the United States which shall be made in Pursuance [of the Constitution] . . . shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. Any state law that conflicts with acts of Congress, such as the NLRA, is invalidated by this provision. *Rose* v. *Ark. State Police,* 479 U.S. 1, 3, 107

S. Ct. 334, 93 L. Ed. 2d 183 (1986).  Since the NLRA does not contain an explicit preemption clause, the governing rule is that the state law should be sustained "unless it conflicts with federal law or would frustrate the federal scheme, or unless the courts discern from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States." *Malone* v. *White Motor Corp.*, 435 U.S. 497, 504, 98 S. Ct. 1185, 55 L. Ed. 2d 443 (1978).  With respect to the NLRA, Congress's declared purpose was "to remedy '[t]he inequality of bargaining power between employees who do not possess full freedom of association or actual liberty of contract, and employers who are organized in the corporate or other forms of ownership association.'"  *Metropolitan Life Ins. Co.* v. *Mass. Travelers Ins. Co.*, 471 U.S. 724, 753, 105 S. Ct. 2380, 85 L. Ed. 2d 728 (1985) (citing 29 U.S.C. § 151).  The NLRA is therefore "concerned primarily with establishing an equitable process for determining terms and conditions of employment, and not with particular substantive terms of the bargain that is struck when the parties are negotiating from relatively equal positions."  *Id.*

Two NLRA preemption doctrines have developed.  The first, found in *San Diego Bldg. Trades Council, Millmen's Union, Local 2020* v. *Garmon,* 359 U.S. 236, 79 S. Ct. 773, 3 L. Ed. 2d 775 (1959), forbids state regulation of activities that the NLRA protects *or* prohibits.  *Id.* at 244-45.  *Garmon* preemption is designed to "prevent conflict between state and local regulation and Congress' integrated scheme of regulation."  *Cannon* v. *Edgar*, 33 F.3d 880, 884 (7th Cir. 1994).  It applies when the matter the state seeks to regulate is "arguably within the compass of [section seven] or [section eight] of the [National Labor Relations] Act."  *Garmon*, 359 U.S. at 246.  Section seven of the NLRA explicitly sanctions activities that union employees may engage in, such as,

> the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other

concerted activities for the purpose of collective bargaining or other mutual aid or protection, and … to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

29 U.S.C. § 157. Section eight declares certain activities to be forbidden as unfair labor practices, such as an employer's interfering with the rights guaranteed by section seven or discriminating in hiring between union and nonunion employees, or, in the case of labor unions, forcing individuals to join unions or refusing to bargain collectively with an employer. *See* 29 U.S.C. § 158. Section eight also articulates the obligation of both employers and unions to bargain collectively but notes that that obligation does not compel either party to agree to a proposal or make a concession. *Id.* *Garmon* preemption protects the National Labor Relations Board's primary jurisdiction in cases involving the above sections. *Livadas* v. *Bradshaw*, 512 U.S. 107, 117 n. 11, 114 S. Ct. 2068, 129 L. Ed. 2d 93 (1994).[3]

The Supreme Court established another form of preemption in *Lodge 76, Int'l Ass'n Machinists & Aerospace Workers, AFL-CIO* v. *Wis. Employment Relations Comm'n*, 427 U.S. 132, 96 S. Ct. 2548, 49 L. Ed. 2d 396 (1976). *Machinists* preemption prohibits state and municipal regulation of areas that Congress left to the free play of economic forces. *Id.* at 140. The Court recognized that "Congress' decision to prohibit certain forms of economic pressure while leaving others unregulated represent[ed] an intentional balance" between the powers of management and labor. *Golden State Transit Corp.* v. *City of L.A.*, 475 U.S. 608, 614, 106 S. Ct. 1395, 89 L. Ed. 2d 616 (1986). *Machinists* preemption applies to restrictions by states on those methods of economic pressure that Congress has left to the parties. States are not allowed to make such methods illegal. *See Garner* v. *Teamsters, Chauffeurs & Helpers Local Union No.*

---

[3] *Garmon* preemption has two exceptions, namely when the challenged activity is "of only peripheral concern to the federal law or touches interests deeply rooted in local feeling and responsibility." *Belknap, Inc.* v. *Hale*, 463 U.S. 491, 498, 103 S. Ct. 3172, 77 L. Ed. 2d 798 (1983) (citing *Garmon*, 359 U.S. at 243-44); *see also Kolentus* v. *Avco Corp.*, 798 F.2d 949, 961 (7th Cir. 1986). Neither exception has been argued to be at issue here.

*776 (A.F.L.)*, 346 U.S. 485, 501, 74 S. Ct. 161, 98 L. Ed. 228 (1953) (the state does not have the ability to enjoin union picketing); *520 Michigan Ave. Assoc., Ltd.* v. *Devine*, 433 F.3d 961, 965 (7th Cir. 2006) (the state may not criminalize an employer's act of hiring replacement workers). Thus, both forms of preemption are interested in the process of collective bargaining, not with specific terms.

The complaint appears to assert that both *Garmon* and *Machinist* preemption apply to the Amendment. The Hotel alleges that the Amendment interferes with the collective bargaining process and upsets the balance of economic power between it and Unite Here. It complains that the Amendment requires it to unilaterally alter the terms of the collective bargaining agreement by implementing the terms of the Amendment in place of those in the agreement. In other words, the legislature's action has forced the Hotel to accede to a contract term that it was in the midst of negotiating with Unite Here.

This argument is similar to the one that the Supreme Court rejected in *Metropolitan Life*. There, a Massachusetts statute required that specified mental health care benefits be provided to a Massachusetts resident insured under a general insurance policy or an employee health care plan. 471 U.S. at 728. Because the terms of benefit plans were the subject of collective bargaining agreements between unions and employers or insurers, the appellants in *Metropolitan Life* argued that the statute was in effect mandating terms of collective bargaining agreements and should be preempted. *Id.* at 748. Furthermore, their position was that the NLRA intended to prevent states from determining standards "that labor and management would otherwise have been required to negotiate from their federally protected bargaining positions, and would otherwise have been permitted to set at a lower level than that mandated by state law." *Id.* at 751. Similarly, in *Fort Halifax Packing Co., Inc.* v. *Coyne*, 482 U.S. 1, 3, 107 S. Ct. 2211, 96 L.

Ed. 2d 1 (1987), Maine implemented a statute requiring employers to provide a one-time

severance payment to employees in the event of a plant closing.  The appellant argued that

although the state was not *directly* regulating the economic activity of the parties, it was

*indirectly* undercutting the collective bargaining process.  *Id.* at 20.

The Supreme Court ruled that neither statute was preempted and explained that "the mere

fact that a state statute pertains to matters over which the parties are free to bargain cannot

support a claim of pre-emption, for 'there is nothing in the NLRA . . . which expressly forecloses

all state regulatory power with respect to those issues . . . that may be the subject of collective

bargaining.'"  *Fort Halifax*, 482 U.S. at 21-22 (quoting *Malone*, 435 U.S. at 504-05).

Furthermore, the fact that a matter is the subject of negotiations does not prevent a state from

passing "legislation that imposes minimal substantive requirements on contract terms negotiated

between parties to labor agreements."  *Beckwith* v. *United Parcel Service, Inc.*, 889 F.2d 344,

348 (1st Cir. 1989) (citing *Metropolitan Life*, 471 U.S. at 754-55).  These minimum substantive

requirements, also termed minimum labor standards, allow "both employers and employees to

come to the bargaining table with rights under state law that form a 'backdrop' for their

negotiations."  *Fort Halifax*, 482 U.S. at 21 (citing *Metropolitan Life*, 471 U.S. at 757).  "No

incompatibility exists, therefore, between federal rules designed to restore the equality of

bargaining power, and state or federal legislation that imposes minimal substantive requirements

on contract terms negotiated between parties to labor agreements, at least so long as the purpose

of the state legislation is not incompatible with these general goals of the NLRA."  *Metropolitan

Life*, 471 U.S. at 754-55.  Therefore, while a state is not allowed to dictate the actual terms of

collective bargaining agreements, *Commonwealth Edison* v. *Int'l Bhd. Elec. Workers*, 961 F.

Supp. 1169, 1180 (N.D. Ill. 1997), minimum labor standards do not constitute specific terms that

the parties must write into their agreements. Instead, they determine a baseline below which the negotiations may not fall.

This point is illustrated by comparison to cases in which courts have found that states *have* impermissibly intruded into the collective bargaining process by requiring parties to agree to a specific term. In *Cannon* v. *Edgar*, 33 F.3d 880, 882 (7th Cir. 1994), the Illinois Burial Rights Act required cemeteries and gravediggers to negotiate *and agree on* the establishment of a pool of workers designed to perform religiously required interments during labor disputes. If the parties did not agree on such a pool by a specified date, they would be in violation of the statute. *Id*. The Seventh Circuit affirmed the district court's holding that the statute was preempted. *Id*. at 885. It found the statute preempted under both *Garmon* and *Machinists*, explaining that the "Burial Rights Act intrudes on the collective bargaining process in a variety of ways; it orders the parties to negotiate as to a specific substantive condition …. And more invasive, the Burial Rights Act orders the parties to agree on a pool of workers, or face sanctions for a failure to do so…. It directly interferes with the ability of the cemeteries and gravediggers to reach an agreement unfettered by the (labor) restrictions of state law." *Id*. at 885-86.

In *Commonwealth Edison,* the Illinois Successor Statute provided that when a collective bargaining agreement contains a "successor clause," a new employer would be required to honor the obligations of its predecessor's agreement. 961 F. Supp. at 1171. Judge Andersen found that the statute was preempted by *Garmon*, because it "eliminate[d] the bargaining process altogether by forcing a new employer to honor a collective bargaining agreement it neither bargained for nor assumed. We have no doubt that such compulsion violates the NLRA's mandate that the parties not be compelled to agree to a proposal or make a concession." *Id*. at 1181.

In both *Cannon* and *Commonwealth Edison*, the state statutes required the parties to incorporate specific substantive terms into their agreements. These were not merely baselines, which would have allowed the parties to negotiate what the actual terms would be, but instead made the parties' decisions for them, leaving no room for continued negotiation. Therefore, both statutes were preempted.

The court in *Chamber of Commerce of the United States* v. *Bragdon*, 64 F.3d 497, 501 (9th Cir. 1995), provided the following helpful framework for analyzing state statutes:

> The [United States Supreme] Court has clearly held that state legislation, which interferes with the economic forces that labor or management can employ in reaching agreements, is pre-empted by the NLRA because of its interference with the bargaining process. *See, e.g., Machinists*; *Golden State Transit Corp.* v. *Los Angeles*, 475 U.S. 608, 106 S. Ct. 1395, 89 L. Ed. 2d 616 (1986). The Court has also clearly held that a state's requirement of "minimal substantive requirements" on contract terms is not such an interference with the bargaining process as to be pre-empted. There is no doubt that imposing substantive requirements does affect the bargaining process. Viewed in the extreme, the substantive requirements could be so restrictive as to virtually dictate the results of the contract. The objective of allowing the bargaining process "to be controlled by the free-play of economic forces" can be frustrated by the imposition of substantive requirements, as well as by the interference with the use of economic weapons. *See Barnes* v. *Stone Container Corp.*, 942 F.2d 689, 693 (9th Cir.1991); *Bechtel Const.* v. *United Brotherhood of Carpenters*, 812 F.2d 1220, 1226 (9th Cir.1987). The question then becomes the extent of the substantive requirements that a state may impose on the bargaining process.

The state statute at issue in that case required that employers pay "prevailing wages" to their employees on certain types of private industrial construction projects costing over $500,000. *Id*. at 498. Those prevailing wages were to be ascertained by reference to established collective-bargaining agreements within the locality in which the public work was to be performed. *Id*. at 499. An employer seeking to engage in construction covered by the ordinance had to agree to comply with its terms and to pay the state-determined prevailing wage for public works before the County would issue a building permit for the private construction project. *Id*. The manner in which the ordinance operated affected not only the total of the wages and benefits to be paid, but also the division of the total package that would be paid in hourly wages directly to the worker and the amount paid by the employer in health, pension, and welfare benefits for the worker. *Id*. at 502.

The court determined that this statute went too far and was preempted, reasoning that "[i]t is clear that this Ordinance affects the bargaining process in a much more invasive and detailed fashion than [did the statutes] approved in *Metropolitan Life* and *Fort Halifax*.... This

Ordinance provides for specific minimum wages and benefits to be paid to each craft and only to those workers who are engaged in the specific construction projects covered by the Ordinance…. Furthermore, this type of minimum labor standard enactment, which is not of general application, but targets particular workers in a particular industry and is developed and revised from the bargaining of others, affects the bargaining process in a way that is incompatible with the general goals of the NLRA." *Bragdon,* 64 F.3d at 502-04.

Finally, an Oregon law mandating minimum rest periods only for *nonunion* workers was preempted by the NLRA due to the effect the law would have on collective bargaining in forcing unionized workers to bargain for what would have been their right if they were not in the union. *McCollum* v. *Roberts*, 17 F.3d 1219, 1222-24 (9th Cir. 1994).

Minimum labor standards are usually discussed in the context of *Machinists* preemption, but they also should be considered with relation to *Garmon.* As stated above, minimum labor standards bestow rights on employees as individuals and form a backdrop for the bargaining process. *Garmon* prohibits state restrictions on the specifically condoned and protected activities enumerated in the NLRA while *Machinists* covers those that were not expressly addressed. Or, as stated by the Ninth Circuit in *Bragdon*, 64 F.3d at 499-500, "the NLRA prevents a State from regulating within the protected zone, whether it be a zone protected and reserved for market freedom, *see Machinists*, or for NLRB jurisdiction, *see Garmon*."

The Amendment does not directly restrict any conduct permitted by section 7 or prohibited by section 8 of the NLRA or any economic weapons of self-help left unregulated by Congress. Under *Metropolitan Life*, the fact that the Amendment deals with a contested subject of negotiation is insufficient to find it to be preempted. 471 U.S. at 754-55. The remaining question is thus whether it indirectly restricts any protected activities, thereby frustrating the goals of the NLRA, or if it instead qualifies as a minimum labor standard. If it qualifies as a minimum labor standard, it will not be preempted under either *Garmon* or *Machinists.*

The Amendment applies only to counties in Illinois with a population of greater than 3,000,000, which limits its effect to Cook County. Its effect is also limited to one small group of employees in a single industry: hotel room attendants. Otherwise, however, it affects union and non-union employees equally.

The geographic limitation of the Amendment and its limitation to a particular group within the workforce do not automatically preclude it from being a minimum labor standard. While many laws that are thought of as minimum labor standards do have broad application, the Ninth Circuit upheld a wage law that applies specifically to apprentices in the construction business. *Assoc. Builders & Contractors of S. Cal., Inc.* v. *Nunn*, 356 F.3d 979 (9th Cir. 2004). The Second Circuit has held that a wage regulation that applied only to public works projects was a minimum labor standard and therefore not subject to preemption. *Rondout Elec., Inc.* v. *N.Y. State Dept. of Labor*, 335 F.3d 162, 168-169 (2nd Cir. 2003). According to these cases, minimum labor standards do not have to apply to all workers in a state or even a profession. The Hotel has cited no case to the contrary and the court has found none.

While the Amendment's narrow reach and notable timing distinguish it from a typical minimum labor standard, it does not supplant the parties' negotiations by making their decision for them, as in *Cannon* and *Commonwealth Edison*. The Amendment also does not go as far as the state did in *Bragdon*. The requirement that hotels allow employees at least three breaks in a seven-hour day and that a room be provided for the employees to use is not as invasive into the collective bargaining process as the complex wage determining scheme was in *Bragdon*.

Furthermore, the Amendment complies with the description of a minimum labor standard set forth by the Supreme Court in *Metropolitan Life* and *Fort Halifax*: "minimum labor standards affect union and nonunion employees equally, and neither encourage nor discourage the collective-bargaining processes that are the subject of the NLRA." *Metropolitan Life*, 471 U.S. at 755. The Amendment forms a backdrop for negotiations in collective bargaining agreements, as union representatives now have these rest periods as the baseline below which the management cannot fall in what they offer as contract terms. It does not discourage negotiation over the actual terms of the agreement between Unite Here and the Hotel, and does not determine what those actual terms will be. In summary, the Amendment does not interfere with the collective bargaining process in a way that is legally significant under NLRA jurisprudence. It is therefore not preempted by the NLRA.[4]

## LABOR MANAGEMENT RELATIONS ACT

The Hotel also asserts that section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), applies to this case. Section 301 provides that suits for violations of contracts between unions and employers may be brought in the federal district courts. 29 U.S.C. § 185(a).[5] "In order to determine whether a party's state law claims are preempted under § 301, courts must decide whether the resolution of the state law claim depends on the meaning of, or requires the interpretation of, a collective bargaining agreement." *Commonwealth Edison*, 961 F. Supp. at 1174 (citing *Lingle* v. *Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06, 407, 409-10, 108 S. Ct. 1877, 100 L. Ed. 2d 410 (1988)). Most cases where section 301 preemption is applied involve a plaintiff's invoking state law to make a claim of entitlement to a benefit. *See, e.g., Baker* v. *Kingsley*, 387 F.3d 649, 652 (7th Cir. 2004) (plaintiffs attempted to bring a claim that defendant violated an Illinois statute regarding wage payment and collection but the court determined that resolution of that claim was preempted because it would require a substantive analysis of the applicable agreement).

The mere existence of a collective bargaining agreement does not necessarily require its interpretation. *Allis-Chalmers Corp.* v. *Lueck*, 471 U.S. 202, 211, 105 S. Ct. 1904, 85 L. Ed. 2d 206 (1985) ("Of course, not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law."). Instead, courts distinguish between cases that merely involve a reference to

---

[4] The Hotel argues that the Amendment unilaterally changes terms of the collective bargaining agreement, which the NLRA proscribes. The cases that the Hotel relies on all pertain to situations in which an employer changed break periods under its own power, not due to a change in state law, which is a significant distinction from this case.
[5] The Supreme Court in *United Steelworkers of America, AFL-CIO-CLC* v. *Rawson*, 495 U.S. 362, 368, 110 S. Ct. 1904, 109 L. Ed. 2d 362 (1990), explained section 301 preemption in more depth:

> Over 30 years ago, this Court held that § 301 not only provides the federal courts with jurisdiction over controversies involving collective-bargaining agreements but also authorizes the courts to fashion "a body of federal law for the enforcement of these collective bargaining agreements." *Textile Workers* v. *Lincoln Mills of Ala.*, 353 U.S. 448, 451, 77 S. Ct. 912, 915, 1 L. Ed. 2d 972 (1957). Since then, the Court has made clear that § 301 is a potent source of federal labor law, for though state courts have concurrent jurisdiction over controversies involving collective-bargaining agreements, *Charles Dowd Box Co.* v. *Courtney*, 368 U.S. 502, 82 S. Ct. 519, 7 L. Ed. 2d 483 (1962), state courts must apply federal law in deciding those claims, *Teamsters* v. *Lucas Flour Co.*, 369 U.S. 95, 82 S. Ct. 571, 7 L. Ed. 2d 593 (1962), and indeed any state-law cause of action for violation of collective-bargaining agreements is entirely displaced by federal law under § 301, *see Avco Corp.* v. *Machinists*, 390 U.S. 557, 88 S. Ct. 1235, 20 L. Ed. 2d 126 (1968). State law is thus "pre-empted" by § 301 in that only the federal law fashioned by the courts under § 301 governs the interpretation and application of collective-bargaining agreements.

a collective bargaining agreement from those where the courts will actually have to determine the meaning of a term. *Baker* v. *Kingsley*, 387 F.3d at 658-59.

Plaintiffs reference the existence of section 301 preemption in their complaint and their opposition to the defendants' motions to dismiss but provide no basis for the court to apply it in this case. The subject of the dispute here is the constitutionality of the Amendment. While the existence (or lack thereof) of a collective bargaining agreement is marginally relevant to the Amendment's status with respect to *Garmon* and *Machinists* preemption, there is no need to interpret the meaning of any provisions in order to determine whether the Amendment is constitutional. If employees have claims under the Amendment, they will be entitled to triple their daily wage, which can easily be determined with minimal consultation of the collective bargaining agreement. Furthermore, the meaning of the expired collective bargaining agreement in this case is not disputed. Therefore, section 301 preemption does not apply.

## EQUAL PROTECTION AND DUE PROCESS

The Hotel also asks for a declaration that the Amendment violates its rights to due process and equal protection under the Fourteenth Amendment of the United States Constitution. In its complaint, however, the Hotel does not include any allegations at all to support this claim. In its response to the motions to dismiss, it attacks some of the defendants' proposed rational bases for the Amendment, but fails to explain why the Amendment lacks any rational basis.

The standard that the court must apply here in evaluating the constitutionality of the Amendment is the deferential rational basis test. "In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Fed'l Commc'ns Comm'n* v. *Beach Commc'ns, Inc.*, 508 U.S. 307, 313, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993). Courts must respect a strong presumption of validity of statutes such as these, and litigants who attack their rationality have the burden to "negative every conceivable basis which might support [them].... Moreover, because [courts] never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature.... In other words, a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Id*. at 314-15 (citations omitted); *see also Smith* v. *City of Chi.*, 457 F.3d 643, 651 (7th Cir. 2006).

This standard applies on a motion to dismiss despite the leniency of Federal Rules of Civil Procedure 8 and 12(b)(6). "To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *Wrobleski* v. *City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992) (holding that the plaintiff's complaint's "conclusory assertion that the policy is 'without rational basis' [was] insufficient to overcome the presumption of rationality coupled with the readily apparent justification for the policy."). Courts in this district have "repeatedly granted 12(b)(6) motions to dismiss an equal protection claim when the government action is rationally related to a legitimate objective." *Ill. Med. Transp. Providers Assoc.* v. *City of Chi.*, 2003 WL 193187, at *1 (N.D. Ill. Jan. 28, 2003). There is no need to first hold a hearing or consider evidence before determining whether a complaint meets this standard. *Maguire* v. *Thompson*, 957 F.2d 374, 378 (7th Cir. 1992); *see also Univ. Prof'ls of Ill.* v. *Local 4100, IFT-AFT, AFL-CIO*, 114 F.3d 665, 667 (7th Cir. 1997) ("No quantum of evidence is necessary to demonstrate

this relationship between means and end: to defeat an equal protection claim subject to rational basis scrutiny, defendants-appellants must only proffer a sound reason for the legislation…. With no opportunity for fact-finding in this case, we do not possess a developed record on the legislative judgment. None is necessary because adequate reasons abound.").

Adequate reasons abound in this case. Many were articulated in the Illinois Appellate Court's decision, and the court refers to that decision for a more comprehensive statement of the possibilities. *See Ill. Hotel and Lodging Ass'n* v. *Ludwig,* 869 N.E.2d 846, 851-53, 374 Ill. App. 3d 193 (Ill. App. 1st Dist. 2007).[6] For example, the legislature may have constrained the Amendment's effect to Cook County because of the high volume of tourism specific to Chicago. There are many more hotels there than in any other area of the state. By extension, hotel employees may be required to work harder. Additionally, hotels in Chicago are larger and perhaps more economically able to handle additional financial burden. The legislature may have wished to avoid burdening the smaller hotels found in other parts of the state. Furthermore, "the Illinois statute books are riddled with laws that treat communities with more than 500,000 residents – *i.e.* Chicago – differently from smaller ones." *Hearne* v. *Bd. of Educ. of the City of Chi.*, 185 F.3d 770, 774 (7th Cir. 1999). Like the court hypothesized in *Hearne*, the legislature may have limited the effect of the Amendment because it believe that hotel workers in Chicago are in a crisis situation, or that due to the hotels' larger size, it would be more effective to treat them differently. *Id.* at 775. Finally, the legislature could have intended to gradually introduce the provisions of the Amendment throughout the state and decided that Cook County was a logical place to start, for some or all of the above-stated reasons. It "must be allowed leeway to approach a perceived problem incrementally." *Beach Commc'ns*, 508 U.S. at 316.

There are also many potential justifications for the legislature's decision to address hotel workers as opposed to the rest of the workforce. As suggested by the defendants, the legislature could reasonably have concluded that hotel room attendants are at particular risk of injury due to their job requirements of lifting increasingly heavy mattresses and other furniture, especially when considering the strict quota requirements imposed by hotel management. Workplace regulation targeting particular occupations is quite common in Illinois, *see* Unite Here's Mem. Supp. Mot. Dismiss, at 12 (listing statutes), and courts have recognized the propriety of such distinctions. *See Nunn*, 356 F.3d at 990 ("[S]tate substantive labor standards … are not invalid simply because they apply to particular trades, professions, or job classifications rather than to the entire labor market.").

Though the Hotel asserts that the reasons given by the defendants for the legislation are neither rational nor reasonable, it does not persuasively explain why that is the case. If, as the Hotel claims in its response to the motions to dismiss, Cook County hotels are "more likely to have available workers and equipment to assist room attendants with physical work," then these hotels would also be better able to implement the requirements of the Amendment. Furthermore, if there are likely to be more available workers, then the Amendment, by the Hotel's own scenario, is reaching a greater number of workers inside Cook County than it would in other

---

[6] The Hotel argues that the court cannot consider the procedural history of the Illinois case or any facts found therein without converting this motion to one for summary judgment. That is incorrect because as stated above, the court need not find that any of the reasons that the Illinois courts found to support the Amendment's rationality are facts in order to consider them for the purpose of this motion. Rather, they can assist this court in the speculation that it must engage in merely by suggesting possible bases for the legislature's decision, whether or not they actually were motivations for the passing of the statute. Additionally, courts routinely consider cases, including their procedural histories, on motions to dismiss. Doing so cannot require conversion to summary judgment.

areas of the state. The Hotel's response merely highlights the ways in which Cook County is different from other counties in Illinois, which supports the Amendment's classification.

With regard to due process, the Hotel has provided no explanation at all of the basis for its claim in either its complaint or its response to the motions to dismiss. Furthermore, it is unclear whether the Hotel is alleging a violation of procedural due process or substantive due process. The Hotel does concede, however, that its due process claim should be evaluated using the rational basis test. Hotel's response, at 20. Therefore, the due process claim will be dismissed based on the same reasoning as stated above regarding the equal protection claim.

## SUBJECT MATTER JURISDICTION

This court's jurisdiction over the state law claims is invoked under 28 U.S.C. § 1367. Having dismissed the federal claims, the court may use its discretion to decline jurisdiction over the remaining state law claims under 28 U.S.C. § 1367(c)(3). In determining whether to exercise jurisdiction, "a district court should consider and weigh the factors of judicial economy, convenience, fairness and comity." *Wright* v. *Assoc. Ins. Cos., Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) (citing *Carnegie-Mellon Univ.* v. *Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988)). "Relinquishing jurisdiction over supplemental state law claims is the normal course of action when the federal claims are dismissed before trial." *Ill. Med. Transp. Providers Assoc.*, 2003 WL 193187, at *2 (citing *Kennedy* v. *Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 727-28 (7th Cir. 1998)).

As a similar case has recently been adjudicated at both the trial and appellate levels of the Illinois state courts, it is prudent to relinquish jurisdiction over the state law claims. The case has not moved beyond the pleading stage in this court and there will be no duplication of efforts if this court relinquishes jurisdiction. Further, in deciding the federal issues, the court has not reached the merits of the state law claims. In *Ill. Med. Transp. Providers Assoc.*, Judge Bucklo dismissed an equal protection challenge to an Illinois Statute and then dismissed the pendent state law claims. This court will do the same. Since the court must relinquish jurisdiction over the state law claims, there is no need to reach the Director's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction.

## CONCLUSION

For the reasons stated above, defendants' motions to dismiss [# 25, # 29] are granted pursuant to Fed. R. Civ. P. 12(b)(6). The court relinquishes jurisdiction over the plaintiff's state law claims. The complaint is dismissed with prejudice and this case is terminated.

ENTER: _Joan H. Lefkow_

JOAN HUMPHREY LEFKOW
United States District Judge

Dated: September 17, 2007